RECEIVED
IN LAKE CHARLES, LA

JUN 2 6 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MANTI OPERATING COMPANY | : | DOCKET NO. 05-1231 |
| VS. | : | JUDGE TRIMBLE |
| UNITED STATES OF AMERICA, DEPARTMENT OF INTERIOR, MECOM MINERALS, LLC, W & T OFFSHORE, LLC AND WICHITA PARTNERSHIP, LTD., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (doc. #55) filed by defendants, Mecom Minerals, LLC, W & T Offshore, LLC and Wichita Partnership, Ltd., (collectively referred to as the "Mecom Interests") wherein the movers seek summary judgment in their favor recognizing and declaring that their mineral servitude affecting the immovable property located within the Sabine National Wildlife Refuge and designated as Tract 5-A, East Cove Unit, Cameron Prairie NWR, Southwest Louisiana NWR (hereinafter "Tract 5-A") is in full force and effect. The United States of America, Department of Interior (the "U.S.A.") opposes the motion.

## FACTUAL STATEMENT

This is an action in interpleader brought by Manti Operating Company ("Manti") to determine the ownership of a portion of the proceeds of gas and condensate production from the Henry No.1 Well attributable to two unit tracts located within Tract 5-A of the East Cove of the Sabine National Wildlife Refuge in Cameron Parish, Louisiana. Relevant to this motion and named

as defendants[1] with allegedly competing interests to the proceeds are the following: (1) the Mecom Interests, who claim ownership of a mineral servitude which burdens the two unit tracts, and (2) the United States, the owner of the surface, who has made a written assertion that the Mecom Interests' mineral servitude has prescribed. Manti is the operator of the Henry No. 1 Well as designated by the Office of Conservation by Order No. 1249-C-2, dated May 26, 2005.[2]

The following facts are not in dispute: On July 3, 1937, the United States, pursuant to a Declaration of Taking in the matter entitled *United States v. 139,248.68 acres, More or Less in Cameron Parish, Louisiana*, No. 2841 (W.D.La. July 19, 1937) acquired a 139,248.68 acre tract of land from The Orange Cameron Land Company in Cameron Parish, Louisiana ("Declaration of Taking"). A portion of the expropriated land consisting of approximately 14,926.73 acres is part of the Sabine National Wildlife Refuge (the "Refuge") and is designated as Tract 5-A. In the Declaration of Taking, the Orange Cameron Land Company reserved "an interest in the oil, gas and other minerals" (the "Mineral Servitude"). The John W. Mecom Company and Four M Properties Limited Partnership (the "Mecom Companies") acquired this particular Mineral Servitude affecting Tract 5-A.

In 1979, the Mecom Companies filed suit in the United States District Court, Western District of Louisiana entitled *The John W. Mecom Company and the Four M Properties Limited Partnership v. The United States of America*, No. 790064 (W.D. La. 1979)(hereinafter referred to

---

[1] Some 27 defendants have been named in this action.

[2] Manti has sought and obtained orders from this Court authorizing it to deposit the proceeds of production attributable to the Refuge Unit tracts into the registry of the Court and to be relieved of any further liability with regard to the deposited funds. Manti has deposited (and continues to deposit) in excess of $4,000,000.00 representing production proceeds attributable to the Refuge Unit Tracts.

2

as the "Litigation"). The subject matter of the Litigation was whether the reservation of an interest in oil, gas and other minerals by the Orange Cameron Land Company in the Declaration of Taking created a mineral servitude, and if so was the servitude one of unlimited duration.

The United States of America and the Mecom Companies settled the Litigation by agreement dated October 19, 1981 entitled "Compromise and Settlement Agreement" filed for record in the public records of Cameron Parish, Louisiana under file No. 172850, Book 482, Page 355 (hereinafter referred to as the "1981 Settlement Agreement"). In the 1981 Settlement Agreement, the United States "specifically recognized that the mineral interest claimed by [the Mecom Companies] is that of a mineral servitude subject to all of the rights, terms, provisions and limitations applicable to a mineral servitude between private parties under the laws of the State of Louisiana." Under said agreement, the United States agreed to "withhold exercise of any legal or equitable right which it may have to question Plaintiff's [the Mecom Companies] claim of a mineral servitude . . . for a period of ten years from the date of the Agreement, and thereafter in accordance with the provisions hereof."

The 1981 Settlement Agreement also provides as follows:

It is further agreed for purposes of this agreement, that the drilling of a well bottomed on or producing Servitude Minerals from a structure or formation located under Tract 5-A, regardless of where the surface location of the well is situated, shall constitute a user of the entire servitude.

In the 1981 Settlement Agreement, the Mecom Companies assigned, transferred and conveyed unto the United States out of their mineral servitude interest a mineral royalty equal to one eighth (1/8th) of the Servitude Minerals in lieu of the five percent (5%) mineral royalty interest previously reserved to the United States in the original Declaration of Taking.

## LAW AND ANALYSIS

The defendants, the Mecom Interests,[3] maintain and submit summary judgment evidence that establishes that there has been continuous unit production from units created by the Orders of the Louisiana Commissioner of Conservation which included portions of Tract 5-A from the date of the 1981 Settlement Agreement to the present without the lapse of more than ten years. In response, the United States argues that there is a genuine issue of material fact as to (1) the language of the 1981 Settlement Agreement, (2) the intent of the parties, (3) and whether Tract 5-A constitutes three distinct mineral servitudes and the maintenance obligation of each servitude.

*Does the alleged incorrect legal description of Tract 5-A in the 1981 settlement agreement preclude summary judgment?*

The United States maintains that the1981 Settlement Agreement includes the following description of lands within Section 20, Township Range 8 West:   The NE 1/4 of the NE 1/4; the West ½ of the NE 1/4; the West ½ *of* the W ½ of the SE 1/4. (emphasis added) However, the Declaration of Taking by which the United States acquired the lands constituting Tract 5-A provides the following regarding that same section of land: The NE of the NE 1/4; the West ½ of the NE 1/4; the West ½ *and* the W ½ of the SE 1/4. Hence, the United States argues that the Settlement Agreement leaves out the entirety of the West ½ of Section 20, Township 14 South, Range West and raises an issue as to whether that exclusion was intentional or otherwise.

In its reply memorandum, the Mecom Interests attaches as Exhibit A, a 1984 amended Settlement Agreement wherein the West 1/2 of Section 20 was expressly included in the property

---

[3] The Mecom Interests are the successor-in-interest to the John W. Mecom Company and Four M Properties Limited Partnership.

description – the exclusion was due to clerical error. The amendment was filed in both the original and suit record and in the public records of Cameron Parish in 1984. Accordingly, there is no genuine issue of material fact for trial as to whether the West 1/2 of Section 20 was included in Tract 5-A.

*Does Tract 5-A consist of three non-contiguous tracts and therefore three mineral servitudes?*

Section 5(i) of the Settlement Agreement provides "Tract 5-A shall be deemed for purposes of this Agreement, . . . to be a single tract, regardless of whether Tract 5-A otherwise constitutes a contiguous tract." The United States maintains that Louisiana Revised Statute articles 31:3[4] and 31:73[5] expressly limit the contractual freedom of parties to establish a single mineral servitude over noncontiguous tracts and limit the freedom of parties to declare as contiguous, tracts which are in fact noncontiguous.

The United States has submitted the Declaration of John W. Grant and a map supplied by the State Land Office to establish that within Tract 5-A are various navigable waterways, the beds and bottoms of which are owned by the State of Louisiana in its capacity as a Sovereign.[6] The United States further maintains that the maps show that the State of Louisiana asserts ownership to these

---

[4] La. R.S. 31:3 is as follows:

Unless expressly or impliedly prohibited from doing so, individuals may renounce or modify what is established in their favor by the provisions of this Code if the renunciation or modification does not affect the rights of others and is not contrary to the public good.

[5] La.R.S. 31:37 is as follows:

A single mineral servitude may not be created on two or more noncontiguous tracts of land.

[6] United States, Exhibit A.

5

beds and bottoms of navigable waterways which would result in Tract 5-A being divided into at least three (3) separate and distinct tracts. The United States argues that under Louisiana law, these tracts are deemed to be noncontiguous for the purpose of identifying the boundaries of the lands within the mineral servitude recognized by the Settlement Agreement. Thus, to the extent the Settlement Agreement sought to create a single mineral servitude over the entirety of Tract 5-A, the provisions of the Settlement Agreement are void as against public policy and of no force and effect.

The land at issue acquired by a Declaration of Taking pursuant to 20 U.S.C. § 257, has been maintained as a Migratory Wildlife Refuge pursuant to the Migratory Bird Conservation Act,[7] and is part of the National Wildlife Refuge System. In *United States v. Little Lake Misere*,[8] the United States Supreme Court held that federal law applies to interpret contracts relating to government acquisitions of property pursuant to the Migratory Bird Conservation Act.[9] In *Lake Misere*, the Supreme court held that, "in a setting in which the rights of the United States are at issue in a contract to which it is a party," and "the issue's outcome bears some relationship to a federal program, no rule may be applied which would not be wholly in accord with that program."[10] Because the transaction at issue is one arising from and bearing heavily upon a federal regulatory program, federal law governs the acquisition contracts, and the issue of noncontiguous lands creating a single mineral servitude is to be determined by the express terms of the 1981and amended 1984

---

[7] 16 U.S.C. § 715, *et seq.*

[8] 412 U.S. 580, 93 S.Ct. 2389 (1973).

[9] 16 U.S.C. § 715 *Lake Misere*, 412 U.S. at 593; *Central Pines Land Co. v. U.S.*, 274 F.3d 881 (5th Cir. 2001).

[10] *Lake Misere*, 412 U.S. at 604.

Settlement Agreements. The purpose of the Migratory Bird Conservation Act was to establish and maintain sanctuaries for the preservation of waterfowl.[11] The intent of the United States and the Mecom Companies was to fashion an agreement whereby the mineral servitude could be maintained with the least possible intrusion onto the surface of the National Wildlife Refuge. No party disputes this.[12] The language of section 5(i) reduces the need to conduct additional operations on the surface of the Refuge in order to maintain the servitude. Accordingly, to the extent the Settlement Agreement sought to create a single mineral servitude over the entirety of Tract 5-A, the provisions of the Settlement Agreement are not void against public policy.

*Is the 1981 Settlement Agreement language ambiguous?*

The United States maintains that the 1981 Settlement Agreement is ambiguous because section 5(i) does not satisfy the rule in Louisiana Revised Statute article 31:75 to overcome article 31:37. Louisiana Revised Statute article 31:37 provides the following:

> Production from a conventional or compulsory unit embracing all or part of the tract burdened by a mineral servitude interrupts prescription, but if the unit well is on land other than that burdened by the servitude, the interruption extends only to that portion of the servitude tract included in the unit.

Parties may, however, contract for a broader rule under the provisions of article 75 which is as follows:

> The rules of use regarding interruption of prescription on a mineral servitude may be restricted by agreement but may not be made less burdensome, except that parties may agree expressly and in writing, either in the act creating a servitude or otherwise, that an interruption of prescription resulting from unit operations or

---

[11] 16 U.S.C. § 701, *et seq.*; *Swan Lake Hunting Club v. United States*, 381 F.2d 238 (5th Cir.1967).

[12] See United States Opposition Memorandum, p. 8.

7

production shall extend to the entirety of the tract burdened by the servitude tract regardless of the location of the well or of whether all or only part of the tract is included in the unit.

Without citing authority, the United States maintains that because section 5(i) of the Settlement Agreement did not refer to article 75 of the Mineral code and/or does not contain the specific terms, pooling or unitization, the section is ambiguous and does not satisfy article 75. The United States maintains that in order to interrupt prescription for Tract 5-A, the Mecom Interests must show (1) a well was drilled, (2) the bottom hole of the well is within a structure or formation under Tract 5-A, (3) the well produces Servitude Minerals from a structure or formation located under 5-A. The Mecom Interests contend that the United States' and its own interpretation of section 5(i) of the Settlement Agreement are exactly the same. Hence, there is no ambiguity. The United States has failed to establish a genuine issue of material fact, and the Court finds that the language of the Settlement Agreement is not ambiguous.

## CONCLUSION

Based on the foregoing, the motion for partial summary judgment filed by Mecom Minerals, LLC, W & T Offshore, LLC and Wichita Partnership, Ltd, will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2th day of June, 2006.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE